UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| TARA VANHOOSER, | ) | |
|---|---|---|
| | ) | Case No. 4:22-cv-44 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| CLINT SHRUM, in his official capacity | ) | |
| and individually, T.J. BEAN, AVERY | ) | |
| MCGINNESS, LARRY SIMS, | ) | |
| and JOSH KING, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Defendants Clint Shrum, T.J. Bean, Avery McGinness, Larry Sims, and Josh King's motion for summary judgment (Doc. 49). For the reasons stated below, Defendants' motion (*id.*) will be **GRANTED**.

I. BACKGROUND

Plaintiff Tara VanHooser is a former probation officer previously employed by the Tennessee Department of Corrections ("TDOC") and assigned to Grundy County, Tennessee. (Doc. 39, at 3.) Defendant Clint Shrum is the former Sheriff of Grundy County. (*Id.* at 2.) Defendants T.J. Bean, Avery McGinness, Larry Sims, and Josh King are, or were, officers with the Grundy County Sheriff's Department. (*Id*. at 2–3.)

On July 23, 2019, Plaintiff and Landon Butcher, an individual on probation, were involved in a domestic incident at a halfway house that Plaintiff owned and operated. (*Id.* at 4.) According to the incident reports filed by the arresting officers, Plaintiff called Bean and informed him that "she needed some one [sic] out [at the halfway house] now." (Doc. 51-7, at

1.) Bean and McGinness drove to the halfway house, and, when they arrived, Plaintiff informed them that Butcher had hit her and would not give her a cell phone that she and Butcher both claimed ownership of. (*Id.* at 1–3.) The officers arrested Butcher and drove him to the Sheriff's Office for booking. (*Id.*) While in the squad car, Butcher "made a comment that him and [Plaintiff] had been engaging in a sexual relationship and had been for the past few months." (*Id.* at 2–3.) While he was being booked, Butcher again made an explicit comment suggesting that he and Plaintiff were in a sexual relationship. (*Id.*)

The next day, Sheriff Shrum was informed of Butcher's arrest and the allegations he made regarding his sexual relationship with Plaintiff. (Doc. 51-2, at 4.) Shrum called Assistant District Attorney Dave McGovern and "explained to [McGovern] that Landon Butcher had been arrested and that he had made some accusations towards [Plaintiff] that they had been having some sexual relationships." (*Id.* at 7.) Shrum further explained that the Sheriff's Department did not want to investigate the case "because of [its] partnership with TDOC" and because Plaintiff was a TDOC probation officer. (*Id.* at 8.) McGovern requested that Shrum "send any information [the Sheriff's Department] had to him and he would talk to [District Attorney Mike Taylor] and they would look at it and take it from there." (*Id.*) After that point, no Defendant had any contact with the District Attorney's Office or the Tennessee Bureau of Investigation ("TBI"). (*Id.* at 8–9; Doc. 51-3, at 7; Doc. 51-4, at 8; Doc. 51-5, at 9–10; Doc. 51-6, at 11.)

That same day, Plaintiff visited the Sheriff's Office to claim the disputed cell phone. (Doc. 51-7, at 4.) While there, she spoke to Defendants King and Sims. King prepared a supplemental incident report that summarizes their interactions:

> Mrs. Vanhooser [sic] tried several times to talk about the case because we informed our office would not be investigating the incident. Mrs. Vanhooser refused to quit talking about the case. Mrs. Vanhooser told myself and Sgt. Larry Sims that she had carried on an improper relationship with [Butcher] but didn't go

2

into details.  Mrs. Vanhooser told us even if shed [sic] had sex with him she committed no crime because her [sic] was not assigned to her case load.  Mrs. Vanhooser also told us that she had told Mr. Butcher if he didn't leave and give her the phone she would charge him with rape.  [B]oth parties stated there was a physical altercation between the two.  Mrs. Vanhooser was informed again that the Grundy Co. Sheriff's Office would not be investigating the matter.  The District Attorney was contacted and a TBI investigation was requested.  TBI agent responded an [sic] interviewed [Butcher] on 07-24-2019.  The phone in question was turned over to The TBI agent for evidence purposes by myself.

(*Id.* at 5.)[1]

On July 24, 2019, the District Attorney's Office requested that TBI investigate Butcher's allegations.  (Doc. 51-8, at 4.)  The investigation was assigned to TBI Agent Luke Webb.  (*Id.*)  In the course of his investigation, Agent Webb interviewed Butcher, Plaintiff, and another resident of the halfway house.  (*Id.* at 5, 8, 11.)  Plaintiff admitted to Agent Webb that she and Butcher had been having sex but repeated her belief that "because [Butcher] was not her probationer that the sexual contact was okay."  (*Id.* at 6–7.)  Based off these interviews with Butcher and Plaintiff, Agent Webb concluded that Plaintiff was using "her power of running the [half-way] home" and "her position as a parole officer to threaten [Butcher] into trying to make him 'behave' or make him do certain things."  (*Id.* at 13–14.)  Agent Webb met with Assistant District Attorney McGovern, and they "agreed that [Plaintiff] should be charged with official misconduct."  (*Id.* at 11–12.)  In November 2019, Agent Webb testified before the Grundy County grand jury.  (*Id.* at 12.)  There is no evidence that any other person testified before the grand jury.

On November 12, 2019, the grand jury returned a two-count indictment charging Plaintiff with "official misconduct," in violation of Tennessee Code Annotated § 39-16-

---

[1] Sims prepared a report of the same incident.  (Doc. 51-7, at 4.)

402(a)(1) and Tennessee Code Annotated § 39-16-402(a)(5).[2][3] (Doc. 51-9, at 1–2.) Specifically, the indictment alleged that Plaintiff used her position as a probation officer to "gain sexual benefits" from Butcher. (*Id.* at 1–2.) An arrest warrant was issued (Doc. 51-10), and TBI agents arrested Plaintiff on November 13, 2019 (Doc. 51-11). Plaintiff alleges that she was held "in the Grundy County jail for over two (2) hours" before being released on a bond of $7,500 dollars. (Doc. 39, at 9.) On October 30, 2020, the charges against Plaintiff were dismissed without prejudice. (Doc. 51-12.)

On September 16, 2022, Plaintiff initiated this action pursuant to 42 U.S.C. § 1983, alleging Defendants violated her Fourth Amendment rights. (Doc. 1.) On October 25, 2023, Plaintiff filed an amended complaint accusing Defendants of malicious prosecution and false arrest, again pursuant to § 1983. (Doc. 39.) While Plaintiff acknowledged that she and Butcher had "commenced a consensual sexual relationship in late May of 2019" (*id.* at 4), Plaintiff claimed that she was not Butcher's supervising probation officer and therefore did not have the power to violate his probation (*id*. at 5–6). Plaintiff further claimed that "[t]he Defendants, at various times, [falsely] reported that Plaintiff was the probation officer assigned to Landon Butcher." (*Id.* at 9.) She also alleged that Defendants falsely "communicated to the District Attorney . . . or to an agent of the Tennessee Bureau of Investigation (TBI) that Plaintiff

---

[2] Tennessee Code Annotated § 39-16-402 provides in relevant part that:
(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:
(1) Commits an act relating to the public servant's office or employment that constitutes an unauthorized exercise of official power;
. . .
(5) Receives any benefit not otherwise authorized by law.

[3] A superseding indictment was returned on March 9, 2020. (Doc. 51-9, at 3–4.) The second indictment charged Plaintiff with the same conduct but updated the dates of the alleged illegal activity and included more detailed descriptions of Plaintiff's alleged misconduct. (*Id.*)

communicated to Landon Butcher that she had the authority to influence whether [his] probation was violated." (*Id.* at 8.) Plaintiff argued that, as a result of these false representations, she was wrongfully arrested and prosecuted. (*Id.* at 9–10.)

On March 25, 2024, Defendants moved for summary judgment. (Doc. 49.) Defendants argued that summary judgment was appropriate because Plaintiff provided no evidence that they supplied false or misleading information to the District Attorney or TBI and regardless, because Plaintiff was indicted by a grand jury, there was probable cause for her arrest and prosecution. (Doc. 50, at 9–13.) Defendants further argue that they are entitled to qualified immunity. (*Id.* at 13–19.) Plaintiff did not file a response. Defendants' motion is now ripe for the Court's review.

## II. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial.

5

Case 4:22-cv-00044-TRM-SKL    Document 53    Filed 04/24/24    Page 5 of 10    PageID #: 392

*Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323

## III. ANALYSIS

### A. Malicious Prosecution

Plaintiff argues that Defendants influenced the decision to prosecute her by falsely telling the District Attorney that Plaintiff was Butcher's probation officer.[4] (Doc. 39, at 9; Doc. 51-1, at 5.)

---

[4] In her amended complaint, Plaintiff alleged that Defendants also falsely informed the District Attorney that she had threatened to violate Butcher's probation. (Doc. 39, at 8.) However, in her deposition, Plaintiff clarified that the only falsehood that she is alleging that Defendants made was the representation that she was Butcher's probation officer:

> Defense Counsel: What specifically – what it the specific evidence that you content [sic] these officers or defendants falsely created that caused your arrest and indictment . . . ?
> Plaintiff: It would go back to the allegation.
> Defense Counsel: What does that even mean? …
> Plaintiff: Where it stated that one of the officers made the allegation.
> . . .
> Defense Counsel: Hold on. Is the only evidence that you're relying on in support of any claim of wrongdoing against these defendants the allegation that Mr. Butcher was one of your probationers?
> Plaintiff: Yes.
> Defense Counsel: Nothing else?
> Plaintiff: Yes.
> Defense Counsel: Am I correct?
> Plaintiff: Yes.

To prevail on a claim for malicious prosecution under § 1983 for violation of Fourth Amendment rights, a plaintiff must establish that:

> (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute";
>
> (2) "there was a lack of probable cause for the criminal prosecution";
>
> (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure"; and
>
> (4) "the criminal proceeding [was] resolved in the plaintiff's favor."

*Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)) (internal quotation marks and alterations omitted).

"'As a general rule, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause'" and precludes a malicious-prosecution claim. *Tallent v. Knight*, No. 22-5126, 2022 WL 18862074, at *2 (6th Cir. Sept. 7, 2022), *cert. denied*, 143 S. Ct. 793, 215 L. Ed. 2d 56 (2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)). However, a plaintiff who has been indicted by a grand jury can still prevail if she is able to prove "that [a defendant officer] '(1) stated a deliberate falsehood or showed reckless disregard for the truth [ ] and (2) that the allegedly false or omitted information was material to the [grand jury's] finding of probable cause.'" *Sykes*, 625 F.3d at 312 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir.2006)); *Tallent*, 2022 WL 18862074, at *2 (noting an exception applies "'where the indictment was obtained wrongfully by defendant police officers who knowingly [or recklessly] presented false testimony to the grand jury.'") (quoting *Mott v. Mayer*, 524 F. App'x 179, 187 (6th Cir. 2013)).

---

(Doc. 51-1, at 5.)

In this case, Plaintiff was indicted by a grand jury. (*See* Doc. 51-9.) The indictment "conclusively determines the existence of probable cause" unless Plaintiff carries her burden of presenting proof that Defendants: (1) deliberately or recklessly presented false evidence to the grand jury and (2) the false evidence was material to the grand jury's finding of probable cause. *See Tallent*, 2022 WL 18862074, at *2; *Sykes*, 625 F.3d at 312. As an initial matter, Plaintiff has presented no evidence that Defendants directly testified before the grand jury.[5] There is only evidence that Defendants prepared incident reports and provided them to the District Attorney. (Doc. 51-2, at 8.) Therefore, Plaintiff must proceed under the theory that Defendants indirectly testified by providing false incident reports to the District Attorney who then provided the reports to the grand jury. However, Plaintiff's claim still fails for several reasons.

First, Plaintiff claims that the incident reports were false because they contained representations that Plaintiff was Butcher's supervising officer (*see* Doc. 39, at 9; Doc. 51-1, at 5), but the incident reports never state that Plaintiff was Butcher's supervising officer. (*See generally* Doc. 51-7.) In fact, the reports specifically note that Plaintiff told Defendants that she was *not* Butcher's probation officer. (*Id.* at 4–5.) Second, even if Plaintiff could demonstrate that the incident reports were false, this is not enough—Plaintiff must present evidence that Defendants intentionally or recklessly falsified the reports. She has not provided any such evidence. Finally, there is no evidence that the grand jury ever considered the incident reports in deciding to indict Plaintiff, much less evidence that the reports were material to its decision. Plaintiff's theory is nothing more than conjecture, which is insufficient at the summary judgment

---

[5] Defendants have testified that they did not participate in the grand jury proceedings or any other proceedings, against Plaintiff. (Doc. 51-2, at 8–9; Doc. 51-3, at 7; Doc. 51-4, at 8; Doc. 51-5, at 9–10; Doc. 51-6, at 11.) Agent Webb also suggests that he was the only person to testify before the grand jury. (*See* Doc. 51-8, at 12.)

phase. *See Chao*, 285 F.3d at 424 (requiring the non-moving party point to specific facts supported by evidence in the record to survive summary judgment).

Summary judgment in favor of Defendants is appropriate because there was probable cause to prosecute Plaintiff.

## B. False Arrest

Plaintiff next argues that, by falsely telling the District Attorney that Plaintiff was Butcher's probation officer, Defendants caused her wrongful arrest. (Doc. 39, at 9; Doc. 51-1, at 5.)

To prevail on a claim for false arrest under § 1983 for violation of Fourth Amendment rights, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 143–44, (1979)). Furthermore, "when a plaintiff is arrested pursuant to a grand jury indictment, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause [for the arrest]." *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 893 (S.D. Ohio 2016) (citation omitted.)

Because an arrest pursuant to a valid grand jury indictment is a complete defense to a false-arrest claim, Plaintiff's claim again turns on whether the grand jury indictment was valid. For the same reasons discussed above, Plaintiff has not carried her burden of showing that Defendants provided false testimony that was material to the grand jury's decision. This fact is fatal to Plaintiff's false-arrest claim.

Summary judgment in favor of Defendants is therefore appropriate because Plaintiff was arrested pursuant to a valid arrest warrant.[6]

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 49) is **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[6] Defendants also argue that they are entitled to qualified immunity. (Doc. 50, at 13–18.) Because the Court has determined that there was no constitutional violation, the Court need not determine whether Defendants are entitled to qualified immunity.